UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SEVENTH DAY CHURCH OF GOD
INTERNATIONAL   MINISTRIES,
INC.,

        Plaintiffs,

v.                                    Case No:  2:25-cv-121-JES-NPM

WESTCHESTER   SURPLUS   LINES
INSURANCE COMPANY,

        Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. #38), plaintiff's Response (Doc. #45), defendant's Reply (Doc. #46), Defendants Notice of Supplemental Authority (Doc. #49), and Defendant's Second Notice of Supplemental Authority (Doc. #50). Defendant argues that Plaintiff cannot establish an entitlement to damages and therefore the claim for breach of an insurance contract fails as a matter of law. For the reasons stated below, the motion is denied.

**I.**

Summary judgment is appropriate only when a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).   A genuine issue of material fact exists when the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party.  McCreight v. AuburnBank, 117 F.4th 1322, 1329 (11th Cir. 2024).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, a court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  Even if facts are undisputed, a court should deny summary judgment if reasonable minds might differ on inferences arising from those facts.  St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th

Cir. 2007).

**II.**

The following facts are undisputed by the parties or admitted in the Answer to the Complaint:

Plaintiff Seventh Day Church of God International Ministries, Inc. (Plaintiff or Seventh Day) owns a building located in Lehigh Acres, Florida (the Property) that was insured by a Policy issued by defendant Westchester Surplus Lines Insurance Company (defendant or Westchester) with a policy period of April 29, 2022, to April 29, 2023. Plaintiff paid all required premiums. The Policy provided coverage up to $325,000 for "direct physical loss of or damage to Covered Property" "caused by or resulting from any Covered Cause of Loss" (Doc. #38-2, pp. 4, 26). A "Covered Cause of Loss" means "direct physical loss unless the loss is excluded or limited in this policy." (Id. at 45.) As relevant to this case, there was a co-insurance coverage option of 80%, a Replacement Cost coverage option selected in connection with the Windstorm or Hail Deductible (Id. at 4), and a Windstorm or Hail Deductible of 3 percent of the Policy limit ($9,750.00). (Id. at 18.)

On or about September 28, 2022, the Property was damaged by Hurricane Ian. Plaintiff promptly reported the loss, made the Property available for inspection, and cooperated with the

investigation of the loss.  Westchester was given timely notice of the loss and acknowledged that the loss was at least partially covered under the Policy.  Westchester made two pre-suit payments pursuant to the Policy totaling $41,573.80.

Plaintiff filed a one-count Complaint (Doc. #4) asserting a breach of contract claim for undervaluing the loss and not making proper payments. (Id., ¶ 16.)  Plaintiff claims damages in the amount of $267,081.40.  (Id. at 1.)  Defendant filed an Answer and Affirmative Defenses (Doc. #8) denying any breach and asserting that coverage is barred in whole or in part under various provisions of the Policy.

### III.

Westchester seeks summary judgment, asserting Plaintiff cannot establish damages above the amount Westchester has already paid, and therefore cannot prove actual damages, a necessary element of a claim for breach of contract.  Westchester argues that it "does not owe payment for repairs that the Plaintiff has not actually made" and "does not owe more than the amount the Plaintiff has actually spent."  (Doc. #38, p. 13.) Based on these two principles, Westchester argues, there is no viable claim because there are no possible damages.  Plaintiff responds that there are a number of reasons to deny the motion, including the

existence of genuine issues of disputed material facts.   (Doc. #45, pp. 1, 5.)

**A.**

"To prove breach of contract, the plaintiff must establish '(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.' [] 'Under Florida law, damages are an essential element of an action for breach of contract.'"   Farman v. Deutsche Bank Nat'l Tr. Co. as Tr. for Long Beach Mortgage Loan Tr. 2006-05, 311 So. 3d 191, 195 (Fla. 2d DCA 2020) (internal citations omitted). "Under Florida law, 'the plaintiff must present evidence regarding a reasonable certainty as to its amount of damages.'"   Miami-Dade Cnty. Expressway Auth. v. Elec. Transaction Consultants Corp., 300 So. 3d 291, 295 (Fla. 3d DCA 2020) (citation omitted)).  "Damages are assessed at the time of the breach rather than at the time of the trial."  Jeremy Stewart Constr., Inc. v. Matthews, 324 So. 3d 41, 42 (Fla. 1st DCA 2021) (citations omitted).  "When construing an insurance policy, as with any other contract, we are required to 'consider its plain language and take care not to give the contract any meaning beyond that expressed.'"  Universal Prop. & Cas. Ins. Co. v. Qureshi, 396 So. 3d 564, 567 (Fla. 4th DCA 2024) (citation omitted).

**B.**

Plaintiff claims that Hurricane Ian caused damage to the roof of its building and two rooms in the building. It is undisputed that Plaintiff paid $62,000 to replace the roof after Lee County found that repairs would not bring the roof up to code. No other repairs have been made, although Plaintiff has a repair estimate and two invoices for additional repairs. It is also undisputed that Westchester has paid Plaintiff a total of $41,573.80 in two payments pursuant to the Policy. Westchester asserts that the Replacement Cost value of the building is $680,774.93 (Doc. #38, p. 6), although this amount is disputed.

As Westchester sees it, the "parties dispute whether the Plaintiff is entitled to payment for a roof replacement or whether repair of the roof would be sufficient, and dispute the scope of repairs to the interior of the building that are necessary because of Hurricane Ian." (Doc. #38 at 2.) Despite these admitted disputes, Westchester seeks summary judgment because Plaintiff cannot prove additional money damages remain unpaid under the Policy.

Westchester starts with the proposition that "Plaintiff has only sought coverage on a Replacement Cost basis." (Id. at 2.) From there, Westchester argus that the Replacement Cost amount due under the Policy "is limited to the amount the Plaintiff

actually spent making the repairs, and Westchester does not owe payment for repairs that are not actually completed." (Id.) Westchester argues that since Plaintiff only spent $62,000 making the repairs, and Westchester has already paid $41,573.80, the most Plaintiff could potentially recover in the lawsuit is $10,676.20. (Id. at 2, 13.)

This potential damage recovery does not doom its summary judgment position, Westchester argues, because the potential recovery is further reduced by the co-insurance penalty which kicks in since the Property was substantially underinsured. (Id. at 2, 13-15.) Westchester argues that the Property is underinsured because the maximum recovery under the Policy is $325,000, but the actual value of the Property is $680,744.93. The Policy has an 80% co-insurance requirement, and applying the formula in the Policy results in a covered loss of $27,245.40. Since Westchester has already paid more than that amount, it argues that Plaintiff's claim fails as a matter of law. (Id. at 14-15.) Additionally, Westchester argues the $9,750.00 Windstorm and Hail Deductible must be added to the previously paid $41,573.80. This means, Plaintiff must show entitlement to a payment for covered losses exceeding $51,323.80 to have any loss recoverable in this lawsuit. (Id. at 11.)

Finally, Westchester also argues that the increased cost of repairs due to compliance with the building code is excluded from the amount Plaintiff may recover.  Since Plaintiff has not identified the cost of repairing the roof, as opposed to the $62,000 to replace it, no amount can be determined, and Plaintiff's claim fails.  (Id. at 15-16.)

## C.

Westchester begins by calculating that the most Plaintiff could recover under the Policy is $10,676.20 and then proceeds to explain why even that amount must be reduced below zero.  The Court is not convinced that the undisputed material facts establish that Plaintiff cannot recover some amount of money damages more than the amount paid to date by Westchester. Accordingly, the summary judgment motion will be denied.

### (1)  Replacement Costs Selected In Policy

"Covered losses can be adjusted on the basis of either replacement cost value or actual cash value.  Actual case value is simply the replacement cost value minus depreciation." Siegel v. Tower Hill Signature Ins. Co., 225 So. 3d 974, 975 n.1 (Fla. 3d DCA 2017)). "'Replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.' [] Replacement cost 'is measured by what it would cost to replace the damaged

structure on the same premises.'" Trinidad v. Florida Peninsula
Ins. Co., 121 So. 3d 433, 438 (Fla. 2013) (internal citations
omitted).   "[A]ctual cash value is generally defined as 'fair
market value' or 'replacement cost minus normal depreciation,'
where depreciation is defined as a 'decline in an asset's value
because of use, wear, obsolescence, or age.'" Trinidad, 121 So.
3d at 438 (citations omitted).  "In other words, replacement cost
policies provide greater coverage than actual cash value policies
because depreciation is not excluded from replacement cost
coverage, whereas it generally is excluded from actual cash
value."  (Id.) (citation omitted)

Westchester asserts that Plaintiff only sought coverage on
a Replacement Cost basis, which is the coverage the Policy
provides.  (Doc. #38, pp. 2, 5.)  The Policy establishes that
this is true.  The Commercial Property Declarations to the Policy
include Plaintiff's selection of the Windstorm or Hail Deductible
and "Replacement Cost" for both Building and Contents coverage.
(Doc. #38-2, pp. 4, 18.)

**(2)   Pre-Conditions for Payment of Replacement Costs**

The Policy promises to pay for direct physical loss of or
damage to Plaintiff's building caused by or resulting from any
Covered Cause of Loss (Doc. #38-2, p. 26, Building and Personal
Property Coverage Form, § A), which includes hurricanes (Id. at

- 9 -

18).  Because Replacement Costs are selected in the Declarations to the Policy, the Optional Coverage provision for Replacement Cost applies.  (Id. at 39-40, § G3.)  Under this provision, "Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form."  (Id. at 40, § G3a.)  An insured may still make a claim on an actual cash value by giving timely notice (within 180 days after the loss or damage) to Westchester.  (Id. at § G3c.)  Three conditions are imposed on the payment of Replacement Costs: Westchester "will not pay on a replacement cost basis for any loss or damage (1) Until the lost or damaged property is actually repaired or replaced, and (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage." (Id. at § G3d.)  Additionally, the Policy provides that Westchester "will not pay more … than … (3) The amount actually spent that is necessary to repair or replace the lost or damaged property."  (Id. at § G3e(3).)

The "until and unless" provision "means that [the insurer] was not obligated to pay [the insured] the replacement cost value until [the insured] had actually made the repairs and incurred the costs of doing so."  CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co., 843 F. App'x 189, 192 (11th Cir. 2021) (citing Ceballo v. Citizens Prop. Ins. Corp., 967 So. 2d 811, 815 (Fla.

2007) ("Courts have almost uniformly held that an insurance company's liability for replacement cost does not arise until the repair or replacement has been completed.") (citation omitted)). See also Universal Prop. & Cas. Ins. Co. v. Qureshi, 396 So. 3d 564, 567 (Fla. 4th DCA 2024) (same).

Based on these Replacement Costs provisions Westchester argues that it does not owe anything for repairs Plaintiff has not actually made and does not owe more than the amount Plaintiff has actually spent. (Doc. #38, p. 13.) Westchester correctly maintains that Plaintiff has spent $62,000 repairing the roof damages it asserts were caused by Hurricane Ian. This becomes the cap on what Westchester may owe, and it is undisputed that Westchester has already paid Plaintiff two payments totaling $41,573.80 on its claim. Westchester proceeds to explain how Plaintiff has no ability to recover the remaining $10,676.20. The Court is not convinced Westchester has successfully done so.

**(3)  Westchester's Payments of $41,573.80**

Plaintiff filed its claim on or before October 9, 2023. (Doc. #45-5, p. 32.) By letter dated August 4, 2023, captioned "Reservation of Rights" (Id., pp. 32-42), Westchester acknowledged Plaintiff's claim for wind and water damage and reported that its investigation remained ongoing. The letter offered several "comments with respect to coverage for this

- 11 -

loss."   (Id. at 32.)   Included was a summary of Westchester's "Undisputed" previous initial payment of $13,275.44 paid on or about March 17, 2023, based on the findings of its engineer and an estimate determined by its adjuster.  (Id. at 33.)  This amount was calculated using a replacement cost of $42,692.64, reducing the replacement cost to $25,474.70 based on the coinsurance provision (59.67%  x  $42,692.64),  reducing  that  amount  by $2,449.26 for depreciation, which resulted in an actual cash value of $23,025.44, from which the Policy 3% deductible ($9,750) was subtracted, for a net claim amount of $13,275.44.  (Id.) That amount was paid to Plaintiff.

By  letter  dated  October  20,  2023,  captioned  "Partial Declination  of  Coverage,"  Westchester  indicated  that  its investigation was complete.  (Id., pp. 44-54.)  Two charts are provided comparing actual cash value with replacement cash value. The letter states that "although the graph showing payment made at ACV [actual cash value] does not allow for a further claim at Replacement Cost [replacement cost value], the NET payment, when based on ACV only, exceeds the amount of the payment when the potential RCV is paid and the coinsurance penalty is applied." (Id. at 52.)  Using a "coinsurance calculation tool" for a covered property value of $680,774.93, the charts are as follows:

- 12 -

| CoInsurance Calculation Tool (RCV) | |
| --- | --- |
| Value of Covered Property* | $680,774.93 |
| % Coinsurance Required | 80% |
| Coinsurance Requirement in $$ | $544,619.94 |
| | |
| Limit of Insurance | $325,000.00 |
| Coinsurance Requirement in $$ | $544,619.94 |
| Penalty | 59.67% |
| | |
| Amount of Loss | $53,853.79 |
| Less Roof Depreciation | $0.00 |
| Total Covered Loss | $53,853.79 |
| X Penalty % | 59.67% |
| Adjusted Loss amount | $32,137.06 |
| | |
| Less deductible | ($9,750.00) |
| Net Payment | $22,387.06 |

| CoInsurance Calculation Tool (ACV) | |
| --- | --- |
| Value of Covered Property* | $680,774.93 |
| % Coinsurance Required | 80% |
| Coinsurance Requirement in $$ | $544,619.94 |
| | |
| Limit of Insurance | $325,000.00 |
| Coinsurance Requirement in $$ | $544,619.94 |
| Penalty | 59.67% |
| | |
| Amount of Loss RCV | $53,853.79 |
| Less Full Depreciation | ($2,529.99) |
| Amount of Loss ACV | $51,323.80 |
| | |
| Less deductible | ($9,750.00) |
| Net Payment | $41,573.80 |

The letter continued that "[s]ince the settlement of the claim on an ACV basis only is of benefit to you, this is the basis upon which payment is being made."  (Id. at 54.)  Westchester issued the second payment of $28,298.36, using the actual cash value. There are a number of disputed factual matters which underly the data in these charts.

Plaintiff argues that Westchester still owes on the actual cash value because it undervalued the damages, and Plaintiff is not back in the position it was had the loss not occurred.  (Doc. #45, pp. 10-11.)  Westchester responds that plaintiff only sought damages based on the replacement value and did not claim actual cash value damages and therefore plaintiff is precluded from doing so now.  (Doc. #46, pp. 2-3.)

- 13 -

**(4)  Value of Covered Property and Co-Insurance Penalty**

Both of the charts, and the first payment calculation, start with a purported value of covered property of over $680,000.  This figure is important because it was used to determine whether the property is underinsured, whether a co-insurance penalty is applied, and the amount of the penalty.  Westchester's value justified a substantial penalty.  But Plaintiff disputes the accuracy of the value.  Plaintiff's estimator (Gannon) disagreed with the adjuster's valuation of the property and found that in 2022, the property was valued at $304,506.00, the same valuation applied by the Lee County Property Appraiser in 2022.  (Doc. #45-6 at ¶¶ 2, 5-9, 13.)  Using this figure, the property is not underinsured, there is no penalty, and the amount due would be significantly higher for both payments.

**(5)  Amount of Loss**

Both payments are based on an "amount of loss" determined by Westchester, but these amounts are disputed by Plaintiff. Plaintiff's public adjuster (Garcia) inspected the property in October 2022, and estimated damages to be $252,127.91 with the roof damage alone totaling $96,499.65.  (Doc. #45-5, p. 2.) Garcia disagreed with the scope and extent of damages contained in the two letters issued by Westchester.  (Id., p. 3.)

Garcia reviewed the calculations on the second chart and noted that the coinsurance penalty was not applied to the actual cash value.  Garcia informed Williams during an inspection that the claim was being maximized whether based on the actual cash value or the replacement value.  Garcia noted that Westchester was aware that plaintiff made its claim on an actual cash basis. (Id. at 3-4.)  Plaintiff also hired an estimator (Gannon) who is a certified building contractor in Florida.  The estimator inspected the property in April 2023, and determined damages were $251,639.36, before depreciation, and a total of $236,865.44. (Doc. #45-6, pp. 2-3.)  In response to summary judgment, Gannon updated the estimate to include depreciation so that the total amount of actual cash value damages is $236,865.44.  If the amount spent by plaintiff is removed along with estimated for roofing and framing, the amount of damage is $168,527.15, or after deducting payments and the deductible, Gannon found unpaid damages totaling $117,203.35.  (Id., pp. 3-4.)

This does not take into consideration the issue of whether plaintiff is entitled to the actual cash value or how any ordinance requirements for the new roof may factor into the equation.  There is an issue of fact on the amount of remaining damages and whether plaintiff would be entitled to the actual

cash value that would cover the interior repairs not yet accomplished.

**(6)  Co-Insurance Penalty**

Under the Policy, when a Coinsurance percentage is shown in the Declarations, Westchester "will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property." Instead, Westchester determines the most it will pay using the following steps:

> (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;
>
> (2) Divide the Limit of Insurance of the property by the figure determined in Step (1);
>
> (3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and
>
> (4) Subtract the deductible from the figure determined in Step (3).

(Doc. #38-2, 38-39.)  Westchester pays "the amount determined in Step (4) or the Limit of Insurance, whichever is less." (Id.) Westchester used a Replacement Cost value of $680,774.93, 80% of which is $544,619.94.  (Doc. #38, p. 14.)  Being greater than the Limit of Insurance of $325,000, the co-insurance penalty was applied as follows:

- 16 -

(1)  $680,774.93  multiplied  by  0.8  = $544,619.94;

(2) $325,000 divided by $544,619.94 = 0.5967;

(3) Amount of loss multiplied by 0.5967; and

(4) Subtract the deductible ($9,750) from the figure determined in Step (3).

(Id.)  This would give a covered loss of $27,245.40.  (Id. at 14-15.)

Westchester applied the coinsurance assuming that the value of the property was much higher, and that the property is underinsured because of the higher value.  Plaintiff suggests that the property is valued at $304,506.00.  Applying the formula in the policy if there was adequate insurance:

(1)  $304,506 x 80% = $243,604.80

(2) $325,000 / $243,604.80 = 1.33

(3) Amount of loss x 1.33 = $82,460

(4) $82,460 - $9,750 = $72,710

Therefore, under this formulation, plaintiff would still be owed damages, and this presents an issue of fact for the jury.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #38) is **DENIED.**

2. This case is **referred** to the assigned Magistrate Judge to reset the cancelled settlement conference and/or conduct a status conference regarding the applicable deadlines going forward.

**DONE and ORDERED** at Fort Myers, Florida, this ___12th___ day of February 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Hon. Nicholas P. Mizell
Counsel of Record